UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| ADAM LOWE, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | Docket No. _____ |
| NATIONAL BOARD FOR RESPIRATORY | ) | |
| CARE, INC. AND APPLIED MEASUREMENT | ) | JURY TRIAL DEMANDED |
| PROFESSIONALS, INC., | ) | |
|     Defendant | ) | |

## **COMPLAINT**

### INTRODUCTION

1.   Plaintiff Adam Lowe brings this action against the National Board for Respiratory Care, Inc. ("NBRC") and Applied Measurement Professionals, Inc. ("AMP").   NBRC owns examinations for respiratory therapists and evaluates requests for disability-related accommodations on the tests.   AMP is a wholly-owned subsidiary of the NBRC, and is engaged in test development, test administration, and educational and occupational measurement. Plaintiff brings this action for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101, et seq. and the Maine Human Rights Act, 5 M.R.S.A. § 4591, et seq.

2.   Mr. Lowe is an individual with learning and other disabilities who in May 2011 received his Associates Degrees in Science (Respiratory Therapy) and Liberal Studies from Kennebec Valley Community College.

3.   In 2011, Mr. Lowe registered to take his Entry-Level Certified Respiratory Therapist ("CRT") Examination, which is required of entry-level respiratory therapists in Maine.   To accommodate his disability, Mr. Lowe asked Defendants to allow him to take his examination

with certain reasonable accommodations, including (but not limited to) use of the Kurzweil 3000 ("K3000") screen access software.   Screen access software programs, also called "screen readers," magnify and/or vocalize text; offer a variety of features that allow easy navigation within a text;  and enable the speed, volume and timbre of vocalization to be controlled by the user for maximum comprehension and retentive effect.   Due to his learning and other disabilities, Mr. Lowe uses this auxiliary aid as his primary reading  and testing method and effectively took his exams in respiratory therapy school (including a practice exam of NBRC) using the Kurzweil software.

4.   On or around March 7, 2011, Defendants denied Mr. Lowe's request to take the examination on a computer equipped with the Kurzweil software.   Mr. Lowe made multiple further requests to use the Kurzweil software in testing, which NBRC and AMP denied.

5.   Defendants' refusal to allow Mr. Lowe his requested accommodation to take his CRT examination via the Kurzweil 3000 software violates his rights under the ADA and the MHRA and threatens him with irreparable harm to his career, to his professional development, and to his right to take his licensing examinations without being subjected to unlawful discrimination and the stigma and humiliation that result from such discrimination.

6.   Without injunctive relief from the Court, Mr. Lowe could only take his examinations at a competitive disadvantage to his peers that would unlawfully burden his attempt to obtain his respiratory care license.   Mr.  Lowe has no adequate remedy at law.

7.   Mr. Lowe seeks declaratory and injunctive relief to compel Defendants to provide the CRT examination, and other examinations NBRC and AMP offers, in a format that allows him to use his primary reading method, to wit, in electronic format on a computer equipped with Kurzweil 3000 screen access software.  Provision of the exam in this format is necessary to best

ensure that Mr. Lowe's results on the examinations will accurately reflect his knowledge and understanding of established standards related to a respiratory care therapist's work rather than reflect his disability. The alternative accommodation that Defendant offered, a human reader, is insufficient in that it would deny Mr. Lowe the opportunity to compete on an equal basis.

## JURISDICTION

8.   This is an action for declaratory and injunctive relief brought pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. and the Maine Human Rights Act 5 M.R.S.A. § 4591.  This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and over the state claims pursuant to 28 U.S.C. § 1367.

9.   This Court has jurisdiction to issue injunctive relief and a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

10. Pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c), venue is proper in the District in which this Complaint is filed because Defendants' discriminatory conduct has taken place within Maine and because the events and omissions giving rise to this claim have occurred and are occurring within Maine.

## PARTIES

### Plaintiff Adam Lowe

11. Plaintiff Adam Lowe was at all relevant times a resident of Newport, Maine.   He earned his Associates Degree in Respiratory Therapy from Kennebec Valley Community College in May 2011.  Mr. Lowe had planned to take his respiratory therapy licensing examinations in Maine following completion of his degree in May 2011.  However, he was prevented from doing so because NBRC and AMP would not permit him to have the necessary

accommodations including the Kurzweil 3000 reading software, or in the alterative by taped examination.   He seeks to take the examinations with the necessary accommodations immediately.  He is losing opportunities for employment in the respiratory therapy field because has not been given the opportunity to take the examinations with the necessary accommodations. NBRC requires applicants to take and pass the CRT examination within three years of graduation from a respiratory therapy program.

12. Mr. Lowe is currently pursuing a Bachelor of Science Degree in Respiratory Sciences at University of Tennessee, where utilizes the Kurzweil 3000 software in all coursework and testing.  He plans to return to Maine and work as a respiratory therapist.

13. Mr. Lowe has been diagnosed with impairments including Cognitive Disorder NOS (Acquired Brain Injury) secondary to treatment of refractory temporal lobe epilepsy and surgical resection resulting in problems of attention, memory and learning;  Attention Deficit/Hyperactivity Disorder, Combined Type;  Learning Disorder NOS;  Adjustment Disorder with Mixed Anxiety and Depressed Mood secondary to academic problems caused by neurological/neurocognitive issues; Infantile Meningitis resulting in hearing loss, treatment refractory complex partial seizures disorder/temporal lobe epilepsy, hippocampal sclerosis and successful surgical resection of right temporal lobe in 2004.

14. Due to his impairments, Mr. Lowe is substantially limited and significantly impaired in major life activities including short term memory, cognitive processing, reading, attention, hearing, brain functions, neurocognitive functions, among other major life activities.  Mr. Lowe's disabilities significantly compromise the rate at which he processes information, reads and writes. His impairments require vocational rehabilitation or related services.  The limitations

caused by Mr. Lowe's disabilities are effectively mitigated by the use of Kurzweil 3000 software.

15. Mr. Lowe faces irreparable harm because Defendants will not allow and administer his examinations in a manner that will ensure that the results accurately reflect his aptitude and achievement level rather than his disability.

Defendants National Board of Respiratory Care and
Applied Measurement Professionals, Inc.

16. Defendant National Board of Respiratory Care ("NBRC") is a private testing entity which owns, develops, administers and controls various tests relating to the licensing of respiratory care therapists.   These tests include, but are not limited to, the Certification Examination for Entry-Level Respiratory Therapists ("CRT"), Registry Examination for Advanced Respiratory Therapists ("RRT"), and the RRT Clinical Simulation ("RRT CSE").  The NBRC also provides full-length multiple-choice practice examinations that are designed to simulate taking an NBRC examination, and the software is identical to that which is used for the computerized administration of NBRC examinations.  NBRC is a public accommodation pursuant to the Maine Human Rights Act and the Americans with Disabilities Act.

17. Applied Measurement Professionals, Inc. ("AMP") is a wholly owned subsidiary of NBRC.  AMP provides test development and test administration services to NBRC as well as other certification organizations, government agencies, professional associations and private industry.   AMP administers NBRC examinations relating to the licensing of respiratory care therapists.   AMP is a public accommodation pursuant to the Maine Human Rights Act and the Americans with Disabilities Act.

18. NBRC and AMP are headquartered in Olathe, Kansas, but offer exams in most jurisdictions, including Maine.

5

19. NBRC determines the formats (print, Braille, electronic document, etc.) in which the examinations are offered and the disability-related accommodations that are available to examinees with disabilities.   NBRC has indicated on multiple occasions that it will not provide its examinations on a computer equipped with Kurzweil 3000 ("K3000") screen access software.

FACTUAL ALLEGATIONS

20. When Plaintiff Adam Lowe was a student in community college, he had a learning evaluation which led his clinician to conclude that he has a learning disability.  Due to his learning disability, he had limitations in information cognitive processing difficulties and attention and concentration difficulties.   In combination, the characteristics of his learning disability, cognitive disorder, and ADHD compromise his listening comprehension and reading comprehension, and the rate at which he reads and writes.  Among the recommendations from the clinician is that Mr. Lowe have the use of the Kurzweil Talking Software for all reading, writing assignments and test taking.

21. Since 2008, Mr. Lowe has used either taped examinations or the screen access software K3000 to perform all academic and complex reading tasks.  Use of this assistive technology was developed in consultation with his clinician, his vocational rehabilitation counselor and his learning support staff at community college.  K3000 reads aloud the text of a document while highlighting the word and paragraph of text being read.  While the software vocalizes the text, Mr. Lowe can locate specific phrases or words he needs to repeat, and place the text in a visual context.  This reading method enables Mr. Lowe to read fluently, independently and with automaticity.

22. Prior to using the assistive technology, Mr. Lowe experienced academic learning

problems which interfered with his ability to comprehend and remember written information. With the Kurzweil program, Mr. Lowe found he had all of the necessary tools for him to sustain focus and independently learn.  Not only does the Kurzweil help Mr. Lowe with respect to his focus and concentration, but it also helps him compensate for his physically-based problems of information acquisition or short term memory, by permitting him to identify and review, as many times as he needs to, key pieces of information.

23. In 2011, after Mr. Lowe was armed with assistive technology that made printed text accessible to him, he successfully completed his Associates Degree in Respiratory Therapy at his community college.    He used the Kurzweil 3000 software as his primary reading method to complete all assignments and testing.

24. Mr. Lowe's experience with a human reader is that a human reader provides him with a reading facility substantially inferior to that which he can achieve with the Kurzweil 3000.   A human reader is not an effective accommodation for Mr. Lowe.

25. Early in 2011, Mr. Lowe contacted NBRC and the AMP to seek to request accommodations for his upcoming CRT examination.  In order to be licensed as a respiratory therapist in Maine, applicants must pass the CRT examination, which is developed and administered by the NBRC and AMP.

26. Mr. Lowe explained that he needed testing accommodations due to his disability. The person with whom he spoke seemed confused about what he was asking for.  Eventually she told him to send in documentation of his disability.  On or about March 1, 2011, Mr. Lowe sent his Psychoeducational Assessment by Dr. Adrienne Butler and completed accommodation request forms.

27. Sometime between March 7, 2011 and March 11, 2011, Melissa McKim, AMP

Customer Support Specialist/ADA Scheduler, informed Mr. Lowe his request for the Kurzweil 3000 software or a tape recorded test was denied.  Ms. McKim approved Mr. Lowe's request for extended time and testing in a separate room.  Rather than allowing use of the Kurzweil 3000 software or use of a tape recording of the examination, Ms. McKim offered the use of a human reader.  Mr. Lowe explained that he took his tests at Kennebec Valley Community College with the Kurzweil 3000 software and that this was an effective disability-related accommodation for him.   A reader was not.  Mr. Lowe asked for reconsideration, but Ms. McKim would not reconsider and said it was a "security issue."

28. On or around April 22, 2011, Mr. Lowe applied to NBRC to take his Certified Respiratory Therapist ("CRT") examination.   He contacted Melissa McKim and stated that it is getting close to graduation and he wanted a reconsideration of his request for accommodations. He asked to speak with the person who made the decisions regarding accommodations.

29. On or about May 3, 2011, Mr. Lowe spoke with Bridget Coiner about his need for accommodation.   Mr. Lowe told Ms. Coiner that having a human reader read questions to him is not an effective accommodation for him as it is very distracting due to his disability.  He explained that he took his NBRC mock examinations at his community college with the Kurzweil 3000 software and this was an effective accommodation.  He again offered to take a taped examination if they could not provide the Kurzweil software.  Ms. Coiner said that taping the exam was a security issue.  She indicated that she took information about the Kurzweil software and told Mr. Lowe that someone would get back to him.

30. On or about May 9, 2011, Mr. Lowe spoke with NBRC Assistant Executive Director Ms. Chelsea Earhart.  Ms. Earhart said NBRC would not tape the exam because of security issues.  Ms. Earhart said that NBRC would not administer the tests via the Kurzweil 3000

software either.  She also said that NBRC would not pay for it and she did not even know if the software would be compatible with the examination.   Mr. Lowe said he took the NBRC practice examination at Kennebec Valley Community College with the Kurzweil 3000 software, that it was compatible and an effective accommodation for him.  He said that a reader is not an effective accommodation.  He reiterated that he needed the software to take the tests.  Ms. Earhart would not reconsider the denial.

31. On or about Saturday, May 21, 2011, NBRC informed Mr. Lowe that he could now schedule his CRT examination and if he does not take the exam by August, he will lose his fee. Mr. Lowe had not scheduled his CRT examination because his request for the Kurzweil 3000 software was denied.

32. In a letter dated August 12, 2011, the Disability Rights Center, on behalf of Adam Lowe, requested reconsideration of NBRC's repeated denial of use of the Kurzweil 300 reading software and taped examination.  NBRC indicated to counsel for Mr. Lowe that they would not reconsider at this time and they would forward the letter to its counsel.

33. Since NBRC would not allow Mr. Lowe to take the examination with the Kurzweil 3000 software at that time, he requested a refund because he could not afford to lose his fee.  He indicated that he will reapply and pay the fee when he has his necessary accommodations secured.

34. In a letter dated November 2, 2011, counsel for NBRC indicated that the request for use of the Kurzweil software was denied for the following reasons:   Concerns about test security and compatibility with the Kurzweil software;  third party software cannot be integrated into the system;  CRT test format may not be compatible with Kurzweil software;  and many examinees have taken the CRT examination with the accommodations that NBRC has offered.

35. On or about November 14, 2011, Mr. Lowe filed a Charge of Discrimination with the Maine Human Rights Commission alleging that NBRC and AMP violated the ADA and the MHRA by refusing to administer its examinations to Mr. Lowe so as to best ensure that the examination results accurately reflects the individual's aptitude or achievement level rather than his disability.

36. On or about January 17, 2012, NBRC and AMP filed its response to the Maine Human Rights Commission and denied that it had an obligation to allow Mr. Lowe to use the Kurzweil 3000 software in testing.

37. Mr. Lowe is required to pass the NBRC entry level, CRT examination in order to be a licensed respiratory therapist in Maine.  NBRC requires applicants to take and pass the entry level examination within 3 years of graduation from a respiratory therapy program.

38. In addition to the Certification Examination for Entry-Level Respiratory Therapists (CRT) examination, NBRC owns and AMP administers the Registry Examination for Advanced Respiratory Therapists (RRT), and the RRT Clinical Simulation (RRT CSE), among other examinations.  The Maine Board of Respiratory Care Practitioners requires passage of all these NBRC examinations for professional licensing and/or credentialing in Maine.

39. On or about August 15, 2012, the Maine Human Rights Commission issued a right to sue letter at Mr. Lowe's request.

FIRST CAUSE OF ACTION
VIOLATION OF THE ADA

40. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the complaint.

41. The term "disability" includes, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such

10

individual.   42 U.S.C. §12102(2)(A).   Plaintiff Adam Lowe is an individual with a disability within the meaning of the Americans with Disabilities Amendments Act of 2008, 42 U.S.C. § 12102(2) and 28 C.F.R. §§ 35.104 and 36.104.

42. The ADA prohibits discrimination by private entities, including those that offer professional licensing examinations, such as NBRC.

41.     The ADA requires private entities that offer standardized examinations "related to ... applications, licensing, certification, or credentialing for ... postsecondary education [or] professional ... purposes" to do so in a "place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189; 28 C.F.R. §36.309(a).   NBRC and AMP are such entities and the examinations offered by NBRC are such examinations.

42. The regulation implementing this section of the ADA provides that a private entity that offers such examinations must assure that the examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's disability.  28 C.F.R. § 36.309(b)(l)(i).

43.     The ADA regulations covering examinations such as the CRT, RRT and RRT CSE require, inter alia, "adaptation of the manner in which the examination is given." 28 C.F.R. § 36.309(b)(2). The entity offering the examination must, among other things, "provide appropriate auxiliary aids" unless the entity "can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden." 28 C.F.R. § 36.309(b)(3).

11

44.     Unless Mr. Lowe takes his examinations in an electronic format with Kurzweil 3000 screen access software, his results will not accurately reflect what the examination purports to measure, but will instead reflect his impaired sensory and processing skills.

45.     Defendants' conduct constitutes an ongoing and continuous violation of the ADA and its supporting regulations. Unless restrained from doing so, Defendants will continue to violate the ADA.   Unless enjoined, Defendants' conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

46.     Unless the requested relief is granted, Mr. Lowe will suffer irreparable harm in that he will be discriminated against and denied equal access to professional testing and be unlawfully burdened in seeking admission to the respiratory therapy profession in Maine.

47.     The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(l).  Mr. Lowe is entitled to injunctive relief, as well as reasonable attorney's fees and costs.

SECOND CAUSE OF ACTION

VIOLATION OF THE MHRA

48.     Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

49.     The term "disability" includes, with respect to an individual, a physical or mental impairment that substantially limits one or more of a person's major life activities;   significantly impairs physical or mental health; or requires special education, vocational rehabilitation or related services.  5 M.R.S.A. 4553-A(1)(A)(1), (2), (3).   The term "disability" includes, with respect to an individual, a physical or mental impairment that without regard to severity includes

acquired brain injury and hearing.  5 M.R.S.A. 4553-A(1),(A),(4).  Plaintiff Adam Lowe is an individual with a disability under the Maine Human Rights Act.

50.     The Maine Human Rights Act prohibits discrimination by private entities, including those that offer and administer licensing examinations, such as the NBRC and AMP.

51.     The MHRA requires private entities that offer standardized examinations "related to ... applications, licensing, certification, or credentialing for ... postsecondary education [or] professional ... purposes" to do so in a "place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."  94-348, Accessibility Regulations of the Maine Human Rights Commission (hereafter "(MHRC Regulations") Chapter 7, section 7.23 (A).  NBRC and AMP are such entities and the examinations offered by NBRC are such examinations.

52.     The regulation implementing this section of the MHRA provides that a private entity that offers such examinations must assure that the examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's disability.  MHRC Regulations, section 7.23 (B)(1)(i).

53.     The MHRC regulations covering examinations such as the CRT, RRT and RRT CSE require, inter alia, "adaptation of the manner in which the examination is given." MHRC Regulations, section 7.23 (B)(3). The entity offering the examination must, among other things, "provide appropriate auxiliary aids" unless the entity "can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden." *Id.*

54.     Unless Mr. Lowe takes his examinations in an electronic format with Kurzweil 3000 screen access software, his results will not accurately reflect what the examination purports to measure, but will instead reflect his impaired sensory and processing skills.

55.     Defendants' conduct constitutes an ongoing and continuous violation of the MHRA and its supporting regulations. Unless restrained from doing so, Defendants will continue to violate the MHRA.   Unless enjoined, Defendants' conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

56.     Unless the requested relief is granted, Mr. Lowe will suffer irreparable harm in that he will be discriminated against and denied equal access to professional testing and be unlawfully burdened in seeking admission to the respiratory therapy profession in Maine.

57.     The MHRA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. Mr. Lowe is entitled to injunctive relief, as well as civil penal damages and reasonable attorney's fees and costs.

WHEREFORE, Plaintiff request relief as set forth below.

## RELIEF REQUESTED

Plaintiff prays for judgment as follows:

(a)  A declaration that Mr. Lowe is entitled to take the examinations using a computer equipped with screen access software and that Defendants, by denying this accommodation, offer and administer the examination in a manner that discriminates against Mr. Lowe as a person with a disability;

(b) Preliminary and final injunctive relief requiring Defendants to provide Mr. Lowe the opportunity to take the examinations in an electronic format on a computer equipped with Kurzweil 3000, as he has requested and to which he is entitled;

(c) Civil penal damages pursuant to the MHRA;

(d) An award of Plaintiffs reasonable attorneys' fees and costs; and

(e) Such other and further relief as the Court deems just and proper.

Dated at Augusta, Maine, this 13th Day of November, 2012.

_____
Kristin L. Aiello, Bar No. 8071
kaiello@drcme.org
Peter M. Rice, Bar No.
pmrice@drcme.org
Attorneys for Adam Lowe

DISABILITY RIGHTS CENTER
24 Stone Street, Suite 204
Augusta, ME  04338-2007
207 626 2774 V/TTY